412 So.2d 547 (1982)
STATE of Louisiana
v.
Matthew MITCHELL.
No. 81-KA-0371.
Supreme Court of Louisiana.
April 5, 1982.
*549 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., L. K. Knapp, Dist. Atty., Charles Richard, Evelyn Oubre, Eugene Bouquet, Asst. Dist. Attys., for plaintiff-appellee.
Nick Pizzolatto, Jr., of Caskey & Pizzolatto, Lake Charles, for defendant-appellant.
WATSON, Justice.
Defendant, Matthew Edward Mitchell, together with Casey John Wilson, Martin Christopher Carter and Richard Mark Coleman, was charged with the second degree murder of Curtis Ray Fisher. LSA-R.S. 14:30.1.[1] A jury acquitted Carter and Wilson, but convicted Mitchell and Coleman by a 10 to 2 vote. Mitchell was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence and has appealed, assigning fourteen errors by the trial court.

FACTS
The four defendants and Fisher were fellow inmates in the east wing of the Calcasieu Parish jail's third floor. The four defendants are black and victim Fisher was white. On May 13, 1980, there were several fights in this area of the jail. The altercations were preceded by the inmates' consumption of "squeeze", alcohol derived from Old Spice deodorant sticks. Coleman and Mitchell both drank "squeeze" that night. Although other parties were involved at various times, Mitchell and Coleman beat Fisher viciously in two separate encounters. Mitchell, also known as "Papoose", was barefooted during the fighting. The various fights lasted about forty-five minutes. Those who were not participating stood around watching. Fisher, nineteen years old, had preexisting stress ulcers, but the cause of death was cardiac arrest secondary to brain damage. Other injuries to his body would probably not have been fatal.
The first fight occurred in cell number seven when Coleman hit Picou with a sock full of flashlight batteries. Coleman then hit Fisher. Fisher was trying to hide under his bunk and did not try to defend himself. After Coleman slugged and kicked Fisher a few times, Fisher fell in the doorway between the cell and the hallway. When Fisher fell down, Mitchell started helping Coleman hit and kick Fisher. Fisher did not fight back. Mitchell and Coleman then put Fisher on a bunk and went to cell number five to beat up Ricky O'Quinn. Fisher managed to get back to his own cell, but was later pulled out and beaten again. *550 Mitchell and Coleman stomped him with their feet, and Mitchell held the door bars and jumped up and down on Fisher. Carter and Wilson also participated. There was blood left in the hall after Fisher crawled back to his bunk.
O'Quinn, a white man, was described as a "snitch" or informant and was also rumored to be prejudiced against blacks. Coleman also accused Fisher of "snitching". (Tr. 477)

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in refusing to grant a motion for a change of venue. At the hearing on the motion, there was evidence that there had been some publicity but no strong community interest in Fisher's death. Two witnesses whose work puts them in contact with a large number of people testified that they had not heard the matter discussed at all. Only two of the first eighteen jurors indicated that they had preconceived ideas about the case. The publicity was disseminated in May and trial was held in September, only four months later. Despite this relatively short lapse of time, defendants did not prove prejudice in the public mind, undue influence, or any other ground for removal to another parish. LSA-C.Cr.P. art. 622. Since there was no evidence that a fair and impartial trial could not be obtained in Calcasieu Parish, the trial court did not abuse its discretion in denying the change of venue. Compare State v. Felde, 382 So.2d 1384 (La., 1980).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendants contend that LSA-R.S. 14:30.1 is unconstitutionally vague because the phrase "inflict great bodily harm" is too indefinite to provide a clear standard. The trial court denied the motion as untimely and also because the phrase in question has an understandable meaning.
If an indictment has a substantive defect, a mistrial shall be ordered even after trial has begun. LSA-C.Cr.P. art. 487. Thus, the question of timeliness is irrelevant.
"The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto." State v. Payton, 361 So.2d 866 at 871 (La.,1978). The phrase in question is sufficiently clear to meet the constitutional standard.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER THREE AND FOUR
Defendant contends that a mistrial should have been granted or, alternatively, that his trial should have been severed from that of Ricky Coleman. Since Coleman's attorney had accepted a civil position with the state in Baton Rouge, Louisiana, it is argued that his representation had elements of impropriety and inconvenience.
There were no grounds for a mistrial. LSA-C.Cr.P. arts. 770, 775. Severance is required when justice demands it. LSA-C. Cr.P. art. 704. Even if Coleman were prejudiced, there was certainly no prejudice to Mitchell. The defenses were not antagonistic. It is clear that Mitchell would have been convicted in any case. LSA-C.Cr.P. art. 921; State v. McGraw, 366 So.2d 1278 (La., 1979).
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER FIVE
After juror Mrs. Charles Turner was seated and sworn, she was excused from jury duty on the basis of a note from her physician. It is contended that this was error.
When the trial court was furnished evidence that Mrs. Turner was incompetent by reason of bad health to perform her duties *551 as a juror, she was properly excused. LSA-C.Cr.P. art. 796.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
Defendant contends that additional peremptory challenges should have been granted after Mrs. Turner was excused. The trial court ordered "the panel completed in the ordinary course". LSA-C.Cr.P. art. 796.
LSA-C.Cr.P. art. 799 provides that each defendant facing death or mandatory hard labor shall have twelve peremptory challenges. In State v. Delore, 381 So.2d 455 (La., 1980) additional peremptory challenges were granted for selection of a substitute juror and two alternates. However, the trial court is not required to grant additional peremptory challenges in each instance where a sworn juror is excused. There was no abuse of discretion.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
It is contended that the trial court erred in excusing prospective juror Helen Towner. The colloquy between the court and Mrs. Towner make it clear that her ability to read and write is extremely limited. Although able to sign her name, she declared herself unable to read any instrument furnished to her by the court. There was no error in the trial court's determination that Helen Towner was disqualified. LSA-C.Cr.P. arts. 401(3); 787.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant contends that the comments of five prospective jurors were prejudicial and warranted a mistrial.
Prospective juror Beatty Gentry, excused for cause, admitted that he had a fixed opinion in the matter and was racially prejudiced. His opinion was allegedly based on discussions with two police officers, but he was not allowed to comment on the substance of those discussions.
Prospective juror Raymond Jones, Jr. testified that he felt the defendants "could" be guilty because they were already in jail at the time of the offense. This comment was not so prejudicial that it required a mistrial. The inescapable fact of defendant's incarceration at the time of the crime came to the jury's attention during the trial. Jones was excused for cause because the economic burden of the trial might have influenced his verdict.
Elray Robertson said it was possible his verdict would be influenced by what he had read in the papers about the case, but he did not give any details about what he had read. His testimony on voir dire was not at all prejudicial to the jury panel. Robertson was excused because of his fixed opinion.
Howard Cary was excused for cause because of his expectation that defendants stand up for themselves by testifying. He did not make any comments about guilt which might have prejudiced the jury.
Janie Trammel indicated that the defendants should prove to her that they were not guilty. She was properly challenged for cause, but her comments were not so prejudicial that they prevented defendant from receiving a fair trial.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER NINE
Defendant contends the state's references to other fights in opening statement constituted a prejudicial allusion to other crimes which required a mistrial. LSA-C.Cr.P. art. 770(2). The other rights were part of the res gestae and admissible in evidence. LSA-R.S. 15:447; 15:448.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
During opening argument, one of the defense attorneys stated that victim Fisher was the product of a violent family *552 and that this would be proven by court records. At another point, this defense attorney alluded to the state's burden of proof. The state's objections to these two remarks allegedly misled the jury into believing that the defendant had to put on evidence of innocence. The argument is a tenuous one. The objections were as follows:
"Your Honor, we're going to object. This is his opening statement as to what he intends to introduce...." (Tr. 354)
"Your Honor, I'm going to object. We know the State ... what they've got to prove. He's supposed to be telling the jury what he ... his defense is going to be...." (Tr. 360)
There was no request for an admonition or a mistrial. LSA-C.Cr.P. art. 771. The error, if any, was harmless.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER ELEVEN
Defendant contends that the trial court erred in allowing various witnesses to testify as to other fights that occurred that night in the jail. All of this evidence was properly admitted as part of the res gestae. LSA-R.S. 15:447; 15:448.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER ELEVEN (A)
By supplemental assignment, defendant contends that the trial court erred in allowing the state to make references to race which prejudiced the jury. It is urged that a mistrial should have been granted when there were questions about the color of various inmates.
There is no indication that the state attempted to pursue a racial issue in order to prejudice defendant in the collective mind of the jury. Many of the questions about race and color were asked merely as a means of identification. The various witnesses did not know all of their fellow inmates by name and could identify them only by description or nickname. There was also evidence that the fight had some racial overtones and the evidence of race and color was therefore material and relevant. LSA-C.Cr.P. art. 770. There was no error.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWELVE
Defendant complains of two jury instructions.
It is contended that the trial court erred in instructing the jury as to the law concerning principals in a crime. LSA-R.S. 14:24. The instruction was relevant and correct.
It is also contended that the trial court erred in instructing the jury about general as well as specific criminal intent. Although the first section of LSA-R.S. 14:30.1 requires specific intent, the second section, the felony-murder section, does not require specific intent. There was no evidence that the defendant was engaged in any of the felonies enumerated in LSA-R.S. 14:30.1(2). Because there was no evidence that defendant was engaged in any of the enumerated felonies, the superfluous instruction on general criminal intent could not have confused the jury. There was a correct charge about specific criminal intent, and the jury apparently found a specific intent to inflict great bodily harm. The evidence leaves little doubt that this specific intent was present. Compare State v. Anderson, 343 So.2d 135 (La., 1977).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THIRTEEN
Defendant contends that the trial court should have allowed transcription of the testimony of Dr. Lehrue Stevens, the pathologist who autopsied Fisher in his capacity as deputy assistant coroner. This testimony is said to show a lack of evidence that Mitchell gave Fisher the death blows. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The contention turns on the fact that Mitchell was barefooted *553 during the fighting. It is argued that Stevens said Fisher's fatal head injuries could not have been inflicted with fists or bare feet.
Dr. Stevens' testimony has now been transcribed. Dr. Stevens said it would "be difficult" to inflict Fisher's head injuries with bare feet, but he did not say it was impossible. Stevens also indicated that a fall or a jump on the head could have caused the injuries. Regardless of whether Mitchell's blows were the fatal ones, he was a principal in the crime and is guilty. LSA-R.S. 14:24; State v. Batiste, 410 So.2d 1055 (La., 1982).
This assignment lacks merit.
For the foregoing reasons the conviction and sentence of defendant, Matthew Edward Mitchell, are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:30.1 provides:

"Second degree murder is the killing of a human being:
"(1) When the offender has a specific intent to kill or inflict great bodily harm; or
"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
"Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."