430 So.2d 174 (1983)
STATE of Louisiana, Appellee,
v.
Alfred WHITE, Appellant.
No. 15265-KA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1983.
*176 Dawkins, Coyle & Carter by Michael S. Coyle, Ruston, for appellant, Alfred White.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee, State of La.
Before PRICE, HALL and NORRIS, JJ.
PRICE, Judge.
This is an appeal by defendant, Alfred White, from his conviction and sentence on one count of attempted simple burglary, LSA-R.S. 14:27 and 14:62. Defendant was sentenced to five years confinement at hard labor. The sentence is to run consecutively to the sentence imposed on him on another conviction of attempted simple burglary which is also under review on this docket under this court's docket number 15,264-KA, 430 So.2d 171.
Defendant has been granted an out-of-time appeal in which he makes the following assignments of error:
(1) The trial court erred in accepting a juror over the defendant's challenge for cause.
(2) The evidence adduced at trial was insufficient to uphold the conviction.
(3) The trial court erred in denying the defendant's motion for mistrial based on prejudicial conduct in remarks by the assistant district attorney in the presence of the jury.
(4) The trial court erred in allowing a state witness to render an opinion based on matters not introduced into evidence.
(5) The trial court erred in accepting the state's witnesses as experts in the field of fingerprinting without sufficient evidence that they possessed expertise in this field.
(6) The trial court erred in allowing the state to introduce into evidence a pawn ticket when the signature thereon had not previously been substantiated as the defendant's.
(7) The trial court erred in allowing the state to cross-examine the defendant about his past convictions when the state had failed to furnish the defendant with a copy of his criminal record.
(8) The trial court failed to declare a mistrial when the assistant district attorney made reference to an alleged association of the defendant with a convicted felon where such remarks were irrelevant and prejudicial.
The conviction in this case relates to the burglary of a residence in Ruston, Louisiana, on or about December 2, 1980. White was identified as one of the burglars by a positive print match on fingerprints lifted from the door through which entry was *177 obtained. White was also identified as the man who pawned a watch that was stolen from the victim's home at the time of the burglary.

ASSIGNMENT OF ERROR NO. 1:
The defense claims that the trial court's acceptance of George Holland as a juror over the defendant's challenge for cause was reversible error. This juror indicated to defense counsel on voir dire that he might hastily decide the case in order to resume his search for employment.
At the time the defendant challenged this juror for cause, he had exhausted his peremptory challenges. Therefore, defendant has the right to object to the trial court's ruling under La.C.Cr.P. Art. 800. Upon review of the record, it appears that this juror was subsequently rehabilitated by the court. The juror indicated to the court his willingness and ability to offer whatever time is necessary to consider the evidence and reach a verdict in this case.
Such rehabilitation by the court is authorized in Louisiana jurisprudence. State v. McIntyre, 381 So.2d 408 (La.1980), cert denied 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980); State v. Sonnier, 379 So.2d 1336 (La.1979); State v. Williams, 383 So.2d 369 (La.1980), cert denied 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981), rehearing denied 450 U.S. 971, 101 S.Ct. 1493, 67 L.Ed.2d 622 (1981); State v. Anthony, 347 So.2d 483 (La.1977). State v. Williams and State v. Anthony are cases where the court denied a challenge for cause of a juror who was allegedly preoccupied with personal problems and unable to offer the court his undivided time and attention. In both cases, it was found that the juror's personal concerns would not impede his ability or willingness to properly fulfill his duty as a juror. We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2:
The defendant contends that the evidence produced by the state was insufficient to uphold a conviction in that the evidence failed to exclude every reasonable hypothesis of the innocence of the defendant. It is argued that the testimony of the defense alibi witnesses when weighed in conjunction with the testimony of Jim Dodds, the son of the victim, creates a reasonable doubt that the defendant burglarized the home.
On review of the sufficiency of the evidence to support a criminal conviction, it must be determined whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 6 L.Ed.2d 560 (1979); State v. Buxton, 416 So.2d 71 (La.1982). LSA-R.S. 15:438 provides that in order to convict using circumstantial evidence, this evidence must exclude every reasonable hypothesis of innocence. Therefore, the proper determination on review of a conviction based on circumstantial evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Buxton, supra; State v. Austin, 399 So.2d 158 (La.1981).
At trial, the state presented testimony of three officers who were qualified as experts in the field of fingerprinting to establish the match between the fingerprints lifted from the scene of the crime and those of Alfred White. In addition, the owner of James' Pawn Shop identified White as the person who pawned the watch ticketed under the name of "Fred White" as seller. One of the victims had previously identified this watch as one of the items missing from the home after the burglary. Her testimony disclosed that a burglary had occurred in the home sometime prior to December 2, 1980, and that items of value were taken from the home. Only the watch previously identified was recovered.
The victims had been away from their home for approximately ten days when upon their return they found the residence in a burglarized condition. The glass in the back door as well as the back living room *178 window had been broken. Missing from the home were two television sets, a gun, a watch, and some jewelry. The police investigators found latent prints on the inside of the back door through which entry to the home was apparently made. A positive match was made between the latent prints and the defendant's fingerprints.
The defendant offered evidence to show he could not have made the entry into the victims' home during the time frame he contends the evidence establishes the incident to have occurred. He presented testimony from Jim Dodds, the son of the victims, who testified that he checked his parents' residence on December 2, 1980, between 5:00 and 5:30 p.m., finding no signs of a burglary in the home. Since the offense was discovered at 9:30 p.m. on December 2, 1980, the defendant contends that the burglary must have been committed between 5:00 p.m. and 9:30 p.m. on that day. The defendant then called alibi witnesses to testify as to his whereabouts on the afternoon and evening of December 2, 1980.
According to the testimony of the defendant, his parents, and two of his friends, the defendant's whereabouts on December 2, 1980, were as follows. In the early afternoon he was raking leaves at his parent's house and watching television with his father. Thereafter, he drove his mother to the grocery store where he was found by two friends who informed him that his future wife had just had his child at the hospital. After driving his mother home, he is reported to have driven off with his two informants for the purpose of visiting at the hospital. These two friends of the defendant testified that he remained with them at the hospital until sometime after 8:00 p.m. when they drove him to his parent's home and visited until approximately 8:45 p.m.
The state rebutted the defendant's alibi by attacking the credibility of one of the defendant's witnesses who was previously convicted of forgery.
Furthermore, the state contends that the crime need not have occurred on the evening of December 2. The victim's son, called as a witness for defendant, had previously testified that he checked the back door on the occasion in question. His testimony on cross-examination brought out the possibility that he could have failed to notice the broken glass in the door or the damage to the window in his hurried examination of the residence. Finally, the state argues that a burglary of this kind could be accomplished in a matter of minutes, and therefore, even if the defendant's alibi was to be believed, it did not preclude the possibility that the defendant executed the crime during the uncertain borderline times of his alibi.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.

ASSIGNMENT OF ERROR NO. 3:
The defendant has failed to sufficiently identify the substance of the alleged prejudicial remarks by opposing counsel to enable us to review this assignment of error.

ASSIGNMENT OF ERROR NO. 4:
Defendant argues that the trial court erred in allowing a state witness to render an opinion based on matters not yet introduced into evidence.
The factual circumstances from which the defendant's objection arose, clearly show that the objection lacks merit. The state presented this witness as an expert in fingerprinting for the purpose of identifying the prints recovered from the scene of the crime as those of the defendant. The witness testified that from his study of both the latent print recovered from the scene and the known print of the defendant, it was his opinion that the latent print was that of the defendant.
During cross-examination of this witness, the defense inquired as to whether a blowup photograph of the prints existed. Through his questions, defense counsel insinuated that such an enlargement was necessary to the officer in making an identification *179 of the print and thus should have been presented to the court.
Thereafter, on redirect, the following language is recorded on p. 98 of the transcript.
"BY MR. GRADY:
Q. Have you seen the blow-ups that Inspector Kavanaugh has?
A. Yes, sir.
Q. Is your opinion as to the identity of the person who left the prints still the same?
MR. SMITH: Your Honor, I'm going to object. That's calling for an opinion from something that's not in evidence and I can't cross-examine him with respect to something he's offering an opinion on as to how he knows that. Why he says"
The state's question does not call for an additional opinion from the witness. Rather, the intent of the question is clearly to rebut defense counsel's allegations as to the necessity of the photographic enlargement in order to identify the print.
Upon the subsequent introduction of this item into evidence, the defense attacked the photograph's lack of clarity of detail as regards the latent print. Explaining that enlarged photographs always suffered in this respect, the expert witness stated that the identifications were not made from the photograph which was merely intended as an exhibit for the jury. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5:
At trial the state presented testimony of three employees of the Ruston Police Department who were qualified as experts in the field of fingerprinting to establish the positive match between the fingerprints lifted from the scene of the crime and those of Alfred White. The defense has objected to the testimony of these three witnesses on the grounds that they are not sufficiently versed in this field as to be qualified as experts. This argument lacks merit.
Each one of the officers has received specialized training in fingerprinting, as well as on-the-job training and experience in this field. The record indicates that Inspector Kay has been engaged in fingerprint work for six to seven years. He received training in this field at the LSU Law Enforcement Institute and at the Shreveport Northwest Crime Lab.
Likewise, Detective Kavanaugh attended the field inservice training school conducted by LSU Continuing Education which included training in the field of fingerprinting. He also attended the FBI School of Fingerprinting, and averages about ten hours per week of on-the-job fingerprinting work. Officer Harris uses the training which he received in fingerprinting from the FBI School and the Northwest Law Enforcement Academy in his daily work.
In light of the apparent qualifications of these witnesses in the field of fingerprinting, the trial judge did not abuse the discretion allowed him under LSA-R.S. 15:466 in accepting these men as experts in this field. See State v. Coleman, 406 So.2d 563 (La.1981).

ASSIGNMENT OF ERROR NO. 6:
The defendant objects to the introduction of the pawn ticket into evidence on the basis that the signature thereon had not been properly identified. Within the facts of this case, this objection has no merit.
The defendant's link to the stolen property was established by testimony of the defendant and of the owner of the pawn shop. The defendant testified that he had the watch in his possession subsequent to the time of the burglary. He claims he received the watch from another person with whom he made a street exchange. At no time did the defendant deny pawning the watch, nor did he admit to this transaction.
The owner of the pawn shop, James Burks, identified the defendant as the person who pawned a watch filed under this specific pawn ticket. Prior to introducing the pawn ticket, the state laid a foundation through the testimony of Burks who identified the ticket to the watch which had previously been admitted into evidence. Burks stated that he had filled out this ticket at the time the defendant pawned *180 the watch. Although he did not know White's name at the time of the pawn, Burks recognized him as the man who brought in the watch. In light of this testimony by Burks, there can be no prejudice to the defendant by the introduction of this pawn ticket into evidence.

ASSIGNMENT OF ERROR NO. 7:
The defendant alleges that the trial court erred in allowing the state to question the defendant about past convictions when the state had failed to present the defendant with a copy of his criminal record in response to a discovery motion. The defendant further objects to this line of questioning when the state's response to the defendant's motion for discovery indicated no intent on their part to introduce evidence of extraneous offenses.
Article 720 of the Code of Criminal Procedure states as follows:
Upon motion of defendant, the court shall order the district attorney to inform the defendant of the state's intent to offer evidence of the commission of any other crime admissible under the authority of R.S. 15:445 or R.S. 15:446. Provided however, that such order shall not require the district attorney to inform the defendant of the state's intent to offer evidence of offenses which are part of the res gestae or convictions used to impeach the defendant's testimony.
In the instant case, the state did not introduce evidence of extraneous offenses under LSA-R.S. 15:445 or LSA-R.S. 15:446. Instead, the state used the evidence of prior offenses in order to impeach the defendant's credibility as per LSA-R.S. 15:495. Therefore, there is no conflict in the state's discovery response and its questioning of the defendant at trial.
However, the portion of the defendant's objection which is directed to the state's failure to comply with the discovery order presents a different issue.
In his motion for discovery at item 4, the defendant requested the court to order the district attorney or the appropriate law enforcement agency to furnish the defendant with a copy of any record of his criminal arrests and convictions in their possession or custody. In compliance with La.C.Cr.P. Art. 717, the judge ordered the district attorney to allow the discovery.
The state's response to the motion for discovery did not include a copy of the defendant's record, nor did it answer item 4 of the defendant's motion in any respect. Defendant does in fact have a prior record and when he took the stand, the district attorney proceeded to question him with regard to his prior conviction of attempted burglary.
Defense counsel contemporaneously objected (outside the presence of the jury) to this action by the district attorney on two grounds. First, counsel stated it was his understanding that White was recently convicted of attempted simple burglary. He further believed that his prior conviction had been appealed by the defendant, and therefore should not be used as a final judgment against him. The second basis of objection was due to the fact that the state had failed to provide the defendant with a copy of his criminal record.
The court discovered that the appeal on the prior conviction had not been perfected and the time delays had run. The court then ruled allowing the defendant to be questioned on his prior conviction.
On this appeal, the defendant urges only the second basis of his objection and cites State v. Meshell, 392 So.2d 433 (La. 1980) in support of this allegation of error. In State v. Meshell, the state responded to the defendant's request for a copy of his rap sheet stating that it had none. On the day prior to trial, however, the assistant district attorney discovered the rap sheet in his file. The state failed to furnish the defendant with a copy of this record until after the state had rested its case. The Supreme Court concluded that the state's action constituted a clear violation of its continuing duty to promptly notify the defendant of its discovery of the additional evidence pursuant to C.Cr.P. Art. 729.3. Finding that the accused was prejudiced in his right to prepare an adequate defense, *181 the court held that the trial judge had abused his discretion in failing to grant a mistrial. In the instant appeal, the state rejects the applicability of the Meshell case arguing that the facts are distinguishable. The state contends that it does not possess a rap sheet on the defendant, and therefore could not supply a copy thereof. The state further contends that counsel for the defendant was aware of the prior conviction. The state's argument here is compelling. The discovery article does not require that the district attorney's office obtain a copy of the defendant's criminal record if they are not in possession of one.
As for the state's failure to respond to item 4, the defendant had a pre-trial remedy available. His recourse was to file a motion for compliance informing the trial judge of the state's omission. However since the state did not possess a record on the defendant, such a remedy would be of little avail in this case.
At the time of his objection, counsel for the defendant was apparently aware of the prior conviction since he made reference to this conviction in his statement to the judge. Defense counsel never alleged at trial or on appeal that he was unaware of the defendant's prior convictions at the time the defendant took the stand. There is no claim by the defense counsel that had he received a copy of the defendant's record prior to trial, he would have undertaken a different defense strategy.
For the foregoing reasons, we conclude that the defendant was not prejudiced by the state's failure to respond to item 4 of the defendant's motion for discovery. Furthermore, in light of the claim of the state that it lacked possession of a rap sheet on the defendant, it is difficult to find that the state failed to comply with the disclosure requirements of Art. 717 in a material manner. The court must examine the circumstances of each case to determine whether the defendant was actually prejudiced by the nondisclosure. State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Strickland, 398 So.2d 1062 (La.1981). This assignment has no merit.

ASSIGNMENT OF ERROR NO. 8:
In his closing argument, the assistant district attorney made reference to an alleged association of the defendant with another person who was in prison in Angola. Upon the defendant's objection, the trial court admonished the assistant district attorney to confine his remarks to the evidence. Defense counsel did not at that time move for a mistrial, nor did he request the judge to admonish the jury; and yet, defense counsel alleges that the trial court erred in not declaring a mistrial.
The remark made by the district attorney is not of a nature to be included among the prohibitions of Art. 770. Without a motion for mistrial by the defendant, this alleged error cannot be remedied under Art. 775. State v. Bolton, 408 So.2d 250 (La.1981). Furthermore, the discretionary mistrial allowed under Art. 771 requires that the defendant request the trial court to admonish the jury or that the defendant move for a mistrial. State v. Mitchell, 412 So.2d 547 (La.1982); State v. Bolton, supra. Yet, the defendant neither requested an admonishment to the jury nor moved for a mistrial after the district attorney's allegedly prejudicial conduct.
The court will not overturn a conviction on grounds of improper argument unless the court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Dupre, 408 So.2d 1229 (La.1982); State v. Johnson, 406 So.2d 153 (La.1981); State v. Prestridge, 399 So.2d 564 (La.1981). While the remark made by the assistant district attorney in his closing argument was improper, it does not appear that the jury was influenced by such a remote association.
For the foregoing reasons, the conviction and sentence of Alfred White are AFFIRMED.
AFFIRMED.