438 So.2d 1239 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ronald Joseph "Ronnie" OURSO, Defendant-Appellant.
No. CR83-114.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
Writ Denied November 28, 1983.
*1240 Mark A. Delphin, Delphin & Granger, Lake Charles, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., and Larry James Regan, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before GUIDRY, CUTRER and DOUCET, JJ.
GUIDRY, Judge.
The defendant was tried and found guilty of attempted distribution of a substance *1241 falsely represented to be a controlled dangerous substance (C.D.S.), a violation of LSA-R.S. 14:27 and R.S. 40:971.1. Ronald Joseph Ourso, hereinafter referred to as Ourso, was sentenced to two and one-half years at hard labor, to run consecutively with any other sentence he is now serving.
On May 8, 1982, the Calcasieu Parish Sheriff's Office participated in a proposed drug sale involving the defendant. Thomas Smith, an undercover narcotics agent, met with two narcotics deputies and their informant at a pre-arranged location. Agent Smith and the informant, one Douglas Mosley, were thoroughly searched by the two deputies. Officer Smith's car was also searched. The purpose of the search was to make sure any contraband, later discovered, could only come from the targeted seller, and thus quash any type of "set-up" by the undercover officers.
The informant was known to be acquainted with the suspect and the purpose of his presence was to introduce Officer Smith to the alleged drug dealer, Ourso. After the search, Officer Smith was given one hundred ($100.00) dollars in "buy" money. The other two deputies, Officers Becton and Folds, were to conduct a surveillance operation maintaining constant visual contact with Agent Smith, the informant Mosely, and the suspect, Ourso, throughout the transaction. All four parties proceeded to LaFleur's Roller Rink. Officer Smith was in his car, accompanied by Mosley. Officers Becton and Folds were following in the surveillance van. With the surveillance van set up nearby, Smith and Mosley entered the roller rink. Mosley asked Ourso, who appeared to be employed there, to step outside for a moment. At approximately 8:40 p.m., Ourso exited the building and proceeded to his vehicle, where he opened the door, bent down, and removed three triangular-shaped packets from his sock. The defendant indicated that the white powdery substance within the packets was crystal. Officer Smith selected the fullest packet and paid sixty ($60.00) dollars of the issued "buy" money to Ourso. Agent Smith and the informant then left, returning to the previous location with deputies Becton and Folds immediately behind. Smith, his car, and Mosley were again searched, and the left over "buy" money was returned. Agent Smith then turned over the packet to Deputy Folds. Subsequently, a lab test was conducted on the substance contained within the triangular packet. The lab report indicated that the white powder was propylhexedrine, not a controlled dangerous substance. The defendant was arrested and charged with violation of LSA-R.S. 40:971.1[1], distributing a substance falsely represented to be a controlled dangerous substance.
At the jury trial, evidence was adduced indicating that the term crystal is street terminology for methamphetamine, a controlled dangerous substance. The jury convicted the defendant of the lesser and included offense of attempted distribution of a substance falsely represented to be a controlled dangerous substance. The trial judge imposed a two and one-half (2½) year sentence, to run consecutively with any other sentence being served by the defendant. It is from this conviction and sentence that the defendant has, upon this appeal, perfected four (4) assignments of error.
(1) The trial court erred by accepting the testimony of Sgt. Larry Schell as an expert in the field of "street slang terminology."

*1242 (2) The trial court erred in rejecting defendant's motion for a new trial in that the verdict is contrary to the law and the evidence as the State failed to prove that defendant knowingly and intentionally represented that he was selling a controlled dangerous substance.
(3) The trial court erred by imposing the maximum sentence of 2½ years at hard labor which sentence is to run consecutively with any other sentence the defendant is presently serving in that said sentence is excessive, cruel and unusual.
(4) The trial court erred by failing to allow defendant credit for time served while awaiting sentence on the subject charge.

ASSIGNMENT OF ERROR NO. 1
The defendant contends that the trial court erred in accepting Sgt. Larry Schell of the Louisiana State Police as an expert in undercover narcotics operations and as an expert in street terms or terminology involved in and/or relating to controlled dangerous substances.
It is noted that the defendant did not make a contemporaneous objection to the acceptance of Sgt. Schell as an expert witness, pursuant to C.Cr.P. Art. 841. This fact, in and of itself, is normally sufficient to preclude review of an assignment of error brought out for the first time on appeal. However, because of the uniqueness of the area of expertise, concerning street terminology, we feel that a brief examination of Sgt. Schell's qualifications is in order.
The record reveals that Sgt. Larry Schell was the area supervisor for the Louisiana State Police, Narcotics Section. He has been actively involved in the narcotics section since February, 1976. He attended Federal Drug Enforcement Administration basic narcotics school in 1978. In 1980, he attended the advanced D.E.A. school. Other training included numerous seminars on smuggling, pharmacology and narcotics in general. Prior to becoming supervisor, Sgt. Schell was an undercover narcotics agent with over 150 actual buys to his credit, covering the gamut of all types of drugs sold illegally. Sgt. Schell testified that based upon his training and experience in the field he had become very familiar with street terms used for controlled dangerous substances.
The court, after hearing this testimony concerning Sgt. Schell's experience and qualifications, on both direct and cross-examination, concluded that Sgt. Schell was qualified, based on his training and experience, as an expert in the fields for which he was tendered.
LSA-R.S. 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert, his competency must have been established to the satisfaction of the court."

The Courts have consistently held that the competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Michel, 422 So.2d 1115 (La.1982); State v. Sherer, 411 So.2d 1050 (La.1982); State v. Coleman, 406 So.2d 563 (La.1981); State v. White, 430 So.2d 174 (La.App. 2nd Cir.1983).
In the instant case, Sgt. Schell was thoroughly questioned as to his qualifications and experience by the State, defendant and the court. His testimony in no way prejudiced the defendant. The jury could either believe or disbelieve the testimony of Sgt. Schell and attach to it whatever significance they saw fit.
In light of the apparent training and experience of this expert witness in the field of narcotics, the trial judge did not abuse the discretion granted him. This assignment is without merit.

*1243 ASSIGNMENT OF ERROR NO. 2
The defendant asserts by this assignment that the trial court erred in rejecting defendant's motion for a new trial, in that the verdict is contrary to the law and the evidence as the State failed to prove that defendant knowingly and intentionally represented that he was selling a controlled dangerous substance.
The defendant, Ourso, was charged with selling a substance that was falsely represented to be a controlled dangerous substance, a violation of LSA-R.S. 40:971.1, supra. A jury convicted the defendant of the lesser and included offense of attempted sale of a substance that was falsely represented to be a controlled dangerous substance. The defendant alleges the evidence was insufficient to prove this crime.
The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 560 (U.S. 1979); State v. Graham, 422 So.2d 123 (La. 1982).
The evidence shows without contradiction that the defendant distributed a non-controlled dangerous substance to an undercover law enforcement officer. This fact, in and of itself is not a crime, but by falsely representing the non-C.D.S. to be a C.D.S., there was a violation of LSA-R.S. 40:971.1, supra. Therefore, the State must have proven that defendant knowingly and intentionally distributed a substance which was falsely represented to be a C.D.S. Evidence establishes that the defendant told the undercover agent he was selling "crystal" to him. The validity of the defendant's conviction turns on the meaning of the term "crystal".
Trooper Schell's testimony, taken in its entirety, clearly indicated that in his experience as an undercover narcotics agent for the state police, any time a person expressed they were selling him "crystal", it, in fact, was a C.D.S. known as methamphetamine in a crystalized form.
As was previously discussed, Sgt. Schell was accepted as an expert in narcotics operations and in the field of slang terminology used in the drug trade. His testimony went to the weight of the evidence in this matter. The jury could choose to give whatever weight to the testimony they felt applicable. It was clear to the jury that the intent conveyed by the defendant, with the use of the term "crystal", was to indicate to a person buying such, that it was the C.D.S. methamphetamine. In this instance, it is of no consequence what the defendant actually sold, as long as it was a non-C.D.S. which was falsely represented to be a C.D.S.
In concluding that the defendant specifically intended to falsely represent a substance to be a C.D.S., the jury was apparently unpersuaded by the defendant's theory that the term "crystal" could have been attributed to something other than a C.D.S.
We hold that the verdict of guilty of attempted distribution of a substance falsely represented to be a C.D.S. is clearly supported by the evidence. The jury, as a rational trier of fact, could certainly have found from this evidence that the defendant had a specific intent to distribute a substance which he falsely represented as a C.D.S., and that the State has proved the essential elements of the crime and its lesser but included offense beyond a reasonable doubt. State v. Parker, 425 So.2d 683 (La. 1982). Assignment of error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment, the defendant contends that the sentence imposed by the trial court is excessive, violating Article I, Section 20 of the Louisiana Constitution. The trial judge imposed a sentence of 2½ years at hard labor, to run consecutively with any other sentence being served by the defendant.
*1244 The penalty for the crime of distribution of a substance falsely represented to be a controlled dangerous substance is imprisonment with or without hard labor for not more than five years and a fine of not more than $5,000.00. LSA-R.S. 40:971.1. Thus, the maximum sentence available for an attempt to commit the offense is 2½ years at hard labor and/or a fine of $2,500.00. LSA-R.S. 14:27.
The trial judge is afforded wide discretion in imposing sentences within statutory limits, and the sentence imposed should not be set aside absent a manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Fergus, 418 So.2d 594 (La.1982). However, a sentence which falls within the statutory limits may be constitutionally excessive when considered in light of the particular defendant and the circumstances of the particular crime. State v. Forshee, 395 So.2d 742 (La. 1981); State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is excessive when the penalty is so grossly disproportionate to the severity of the crime that it shocks the court's sense of justice, or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980).
The sentence imposed by the trial judge is the maximum sentence of incarceration available for the crime committed by defendant. Despite the seeming severity of the sentence, we find no abuse of the trial court's wide discretion in imposing sentence. The record shows that the defendant has a previous conviction for possession of marijuana with intent to distribute. He was sentenced to a prison term of six years, and was on parole for that offense when he was charged and convicted of the present offense. As the trial judge noted in his reasons for imposing sentence, the defendant, despite incarceration for a previous similar offense, has shown an unwillingness to reform and lead a law-abiding life. The sentence of 2½ years at hard labor for this defendant is not so disproportionate as to shock our sense of justice. We find no abuse of the trial court's wide discretion. Assignment number 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, the defendant contends that the trial court erred in refusing to give the defendant credit toward service of his sentence for time spent in actual custody prior to sentencing. This assignment has merit.
Following the imposition of sentence, counsel for defendant asked that the record reflect that the defendant was entitled to credit for the time he served awaiting trial. The trial judge refused, stating that, as a result of this conviction, the defendant's parole was automatically revoked as of the date of the commission of the instant offense, and that the time served awaiting trial was to be credited toward the sentence for which he was on parole.
LSA-C.Cr.P. Art. 880 provides:
"The court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence."
When a person is convicted of a felony committed while on parole, parole is deemed revoked as of the date of the commission of the felony. LSA-R.S. 15:574.10. LSA-R.S. 15:574.9(E) provides the following with respect to the credit allowed a defendant for time served:
"E. When the parole of a parolee has been revoked by the board for the violation of the conditions of parole, the parolee shall be returned to the institution from which he was paroled and serve the remainder of his sentence as of the date of his release on parole, subject to consideration by the board of any commutation of the sentence, and any diminution of sentence earned for good behavior while in the institution. The parolee shall be given credit for time served prior to the revocation hearing whether such time is served in a local detention facility, state institution, or out-of-state institution, except that the parolee shall not receive credit for such time served prior to the *1245 revocation hearing where such hearing does not result in revocation, or the revocation is based on the subsequent conviction of a crime, in which case the parolee will receive credit for time served for the subsequent conviction pursuant to Code of Criminal Procedure Article 880." (Emphasis supplied)
As is made clear by the foregoing statute, the time served by a parolee awaiting trial on a subsequent felony is credited toward the sentence ultimately imposed for the subsequent felony. Thus, the trial court was in error in refusing to grant the defendant credit for time served awaiting trial.
We observe that our reversal of the trial court judgment on this issue will apparently have no effect on the length of the sentence to be served by the defendant. Since the defendant was ordered to serve the sentence consecutively with the remainder of the sentence from which he was on parole, it makes no practical difference that the time served is credited to one sentence as opposed to the other. However, because the defendant's assignment of error has merit, we remand the matter to the trial court for resentencing in compliance with the mandatory terms of LSA-C.Cr.P. Art. 880 and LSA-R.S. 15:574.9(E).
Accordingly, the defendant's conviction is affirmed, and this matter is remanded for resentencing in accordance with the views expressed herein.
CONVICTION AFFIRMED AND REMANDED FOR RESENTENCING.
NOTES
[1] LSA-R.S. 40:971.1 provides:

"A. It shall be unlawful for any person to produce, manufacture, distribute or dispense any substance which is falsely represented to be a controlled dangerous substance or which is falsely represented to be a counterfeit controlled dangerous substance."
"B. The provisions of this Section shall not apply to a law enforcement officer acting in the course and scope of his employment or to a medical practitioner, pharmacist, or other person authorized to dispense or administer controlled dangerous substances pursuant to Part X of Chapter 4 of Title 40 of the Revised Statutes of 1950.
C. Any person who violates the provisions of this Section shall be imprisoned with or without hard labor for not more than five years, and in addition may be fined not more than five thousand dollars."