KNOLL, Judge.
Defendant was indicted by the Iberia Parish grand jury for conspiracy to possess more than 10,000 pounds of marijuana between June 5, 1984, and July 27, 1984, and the attempted possession of more than 10,-000 pounds of marijuana on July 27, 1984, both violations of LSA-R.S. 40:979. Defendant was convicted on both counts (joined in the same indictment) by a unanimous jury of twelve. After a pre-sentence investigation, the sentencing judge ordered defendant to serve twelve and one-half years at hard labor without benefit of parole, probation or suspension of sentence and a $100,000 fine on the conspiracy conviction; on the attempt charge defendant was sentenced to serve twelve and one-half years at hard labor and a $100,000 fine; the sentences to run consecutive and an additional year at hard labor was imposed on each count in default of payment of the fines. Defendant argues that the trial court erred in: (1) its failure to determine that the evidence on each count of the indictment was insufficient to sustain convictions; (2) its denial of defendant’s motion for a new trial; (3) overruling defense counsel’s objection to the State’s misrepresentation of defendant’s prior criminal conduct and in admitting into evidence testimony of defendant’s alleged prior criminal conduct over objection of defense counsel; (4) imposing a sentence which is both constitutionally excessive and violative of LSA-C.Cr.P. Art. 894.1; (5) determining that LSA-R.S. 40:979 required minimum sentences for attempt and conspiracy; (6) its misstatement of the responsive verdicts to the crime of conspiracy to possess more than 10,000 pounds of marijuana; (7) denying the motion to recuse the trial judge; (8) denying the motion to quash the indictment; and (9) denying the motion for mistrial. We affirm.
*780 FACTS
In May of 1984 the Sheriff of Iberia Parish requested the help of several police officers from neighboring parishes and the state police to investigate drug traffic in Iberia Parish. Out-of-town police officers were used to avoid recognition by local drug traffickers.
The undercover agents first met Chester “Brock” Hayes, a street distributor of drugs, on May 12, 1984, at the Dixieland Lounge. The agents let Brock know that they wanted to purchase drugs, especially cocaine. Because Brock appeared to have knowledge of drug dealings in Iberia Parish, over the next few weeks the agents developed a close relationship with him by purchasing him food and drinks. Eventually they led Brock to believe that they were importers of large scale quantities of marijuana through a fictitious boating and trucking operation. In connection with their activities the agents wanted Brock to locate someone who could store smuggled marijuana. At this point no one was the particular target of their investigation.
On June 5, 1984, when Brock learned from the agents that they were planning to smuggle approximately 40,000 pounds of marijuana into Iberia Parish, he became excited and brought the agents to defendant, his friend, at the Pot Luck Ranch. There is disputed testimony that defendant was either intoxicated or hung over at this meeting; nonetheless, it is undisputed that defendant was awakened at approximately 8 p.m. to talk to Brock and the agents. Brock introduced the undercover agents as drug traffickers who needed help smuggling 40,000 pounds of marijuana into Iberia Parish. The agents needed a docking site, security, assistance off-loading the marijuana, transportation, and storage facilities for the contraband. Defendant let the agents know that he had previous experience smuggling large loads of marijuana. It was agreed they would all work together. A follow-up meeting was scheduled for June 8,1984, but defendant failed to attend under the pretense of having to attend a meeting with the Louisiana Racing Commission in New Orleans.
On June 9, 1984, Brock responded to a telephone call from the undercover agents by setting up a meeting at his office in New Iberia. When the agents arrived they saw that defendant was also waiting in Brock’s office. Defendant, Brock and the agents left in the agents’ car seeking possible docking sites which defendant pointed out. Five possible sites were viewed and critiqued. Shortly thereafter, on June 16, 1984, defendant arranged a meeting with the agents at a restaurant near the Pot Luck Ranch. There defendant informed the agents that he secured the use of a vacant oil company dock for their operation, and that he was attempting to locate a back-up unloading site. The agents discussed that defendant could expect $40,-000-$50,000 to store the smuggled marijuana. Defendant’s compensation for unloading the marijuana was discussed as $25-30 per pound, i.e., between $1 million and $1.2 million. At the close of the meeting the agents told defendant that they would contact him when an exact date was set for the operation. For the next six weeks there was no contact between defendant and the agents.
The next transaction occurred on July 27, 1984, just past midnight, where the undercover agents went to the defendant at the Pot Luck Ranch and asked him if he could temporarily store 200 bales of marijuana for them. Defendant agreed to provide a storage facility in exchange for $20,000 (of which $10,000 would be paid as a down payment and he would retain a bale of marijuana as security for the remainder). The agents then went to the Acadiana Regional Airport where a rental truck was loaded with the marijuana. Approximately 30 minutes later the agents returned to defendant’s ranch followed by the rental truck filled with approximately 100 bales of marijuana borrowed from the Drug Enforcement Agency. On their return to the ranch they found defendant waiting with his brother, Dwight, and a neighbor, Carl Romero.
*781 One of the undercover agents gave defendant a bag with the payment (actually $7500) which defendant stuck under his arm. Defendant then directed the rental truck to the back of a shed where it could be off-loaded through a window out of view from the main road. Defendant instructed the agents to give his security bale of marijuana to his brother, and he and his brother removed a screen from the window through which they wanted to pass the marijuana.
As the back of the rental truck was opened, someone yelled “Police”. Reinforcement police officers drove up, and at that point defendant and his brother fled into an adjacent field. Eventually defendant and his brother were flushed from the field and arrested. Defendant, after being thoroughly advised of his constitutional rights, was taken to police headquarters for questioning. Shortly thereafter defendant said to Sheriff Errol Romero, “You finally got me. I’ll do anything for a dime.”
SUFFICIENCY OF EVIDENCE
Defendant contends that there was insufficient evidence to support convictions for the indicted offenses, and particularly that the State failed to rebut the defense of entrapment.
Count one of the indictment against defendant is a charge of conspiracy to possess more than 10,000 pounds of marijuana between June 5, 1984, and July 27, 1984.
LSA-R.S. 14:26(A) defines conspiracy in pertinent part as follows:

“A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination. ”

See also State v. Knowles, 392 So.2d 651 (La.1980); State v. Rogers, 375 So.2d 1304 (La.1979).
LSA-R.S. 40:966 E(3) (enacted at the time of this offense) defines the crime with which defendant is indicted as having conspired to commit:

“Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses ten thousand pounds or more of marijuana, tetrahy-drocannabinol, or chemical derivatives thereof, shall be sentenced to serve a term of imprisonment at hard labor of not less than twenty-five years, nor more than thirty-five years and to pay a fine of not less than two hundred thousand dollars nor more than five hundred thousand dollars. ”

LSA-R.S. 40:979 A, the particular conspiracy statute under which defendant was indicted, provides:

“A. Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy. ”

In addition to the elements of the crime outlined above the State also had to prove that defendant had the requisite intent to commit the crime charged. The trier of fact determines whether defendant had the requisite intent to commit the crime and its determination is a question of fact. State v. Graham, 420 So.2d 1126 (La.1982). Intent may be inferred from the circumstances of transactions and actions of the accused, and it need not be proven as a fact. LSA-R.S. 15:445; State v. Adams, 446 So.2d 355 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1355 (La.1984). Whether defendant had the requisite intent to commit the crime or whether the police im *782 planted in the mind of an innocent person the disposition to commit the alleged offense and to induce its commission in order that they may prosecute is a question of fact the jury must decide. State v. Harrington, 332 So.2d 764 (La.1976).
Accordingly, the State had the burden of proving beyond a reasonable doubt that defendant conspired to possess 10,000 pounds of marijuana or more, that he performed an act in furtherance of the agreement, and that he had the requisite intent to commit the crime charged.
In State v. Graham, 422 So.2d 123 (La.1982), the Louisiana Supreme Court considered the constitutional standards to judge the sufficiency of the evidence. The court stated:

“The Due Process Clause of the Fourteenth Amendment requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process, and his conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, we are governed by our statutory rule as to circumstantial evidence: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. R.S. 15:438.”

See also State v. Richards, 426 So.2d 1314 (La.1982).
Viewing the evidence in a light most favorable to the prosecution, it is shown beyond a reasonable doubt that on June 5, 1984, Brock brought the undercover agents to defendant for the specific purpose of enlisting defendant’s assistance in smuggling 40,000 pounds of marijuana into Iberia Parish. When defendant was approached he readily embraced the idea, agreeing to work with Brock and the agents to smuggle, off-load, transport and store the 40,000 pounds of marijuana, and in the process boasted of his prior experience with smuggling large quantities of marijuana. The presence of Brock and the agents at the Pot Luck Ranch on that date was corroborated by Kellie Adams, a student horse trainer who lived at the ranch. Moreover, in furtherance of the conspiracy defendant led Brock and the agents on an inspection tour to view five prospective docking sites which might be used to unload the marijuana.
Defendant argues that if ever he agreed initially to the conspiracy, he withdrew his participation; he relies on the following in support of his argument: he did not initiate the contact with the agents; he never returned their phone calls; and he avoided planned meetings with the agents. We disagree. The record shows defendant’s eager participation in the conspiracy: (1) his voluntary presence at Brock's place of business on the day that the agents were taken on an inspection tour of the unloading sites (the evidence is uncontra-dicted that the agents had not even contacted defendant about meeting them); (2) after the inspection tour, defendant confirmed the availability of one of the offloading sites and of his continuing effort to locate a back-up site at a meeting he set up at a restaurant near the Pot Luck Ranch.
Count two of the indictment against defendant is a charge that on July 27,1984, he attempted to possess more than 10,000 pounds of marijuana, a violation of R.S. 40:979 A cited hereinabove.
Attempt is defined in LSA-R.S. 14:27 as follows:
“A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. ”
*783 The evidence supporting defendant’s conviction of attempted possession is likewise evaluated according to the standard enunciated in Jackson v. Virginia, supra.
The record shows that shortly after midnight on July 27, 1984, undercover agents went to defendant at the Pot Luck Ranch to have him store 200 bales of Columbian marijuana (averaging approximately 60 pounds per bale) in exchange for $20,000 ($10,000 cash and they would leave one bale of marijuana with him which they would later purchase for an additional $10,-000). The agents returned approximately 30 minutes later with a rental truck loaded with 100 bales of marijuana. Defendant was given a paper bag by one of the agents containing what he thought was his $10,000 payment (actually was $7500), and immediately gave instructions to the agents to give the “security” bale of Columbian marijuana to his brother, Dwight Farmer, who had been recruited by defendant to assist in the unloading activity. Defendant then directed the rental truck behind one of the barns on the ranch, out of sight from the highway, and then removed the screen from the rear window on the barn so that the marijuana could be transferred from the truck to the barn without outside detection.
Defendant contends that the evidence was insufficient to prove that defendant attempted to possess in excess of 10,000 pounds of marijuana. In support of his position he relies on the testimony of the State’s forensic chemist that his inventory of the rental truck revealed only 100 bales of marijuana having a gross weight of 6,612.375 pounds. In brief defendant’s counsel states, “... because of the direct relationship between the quantity of marijuana and' the penalty imposed [see LSA-R.S. 40:966 E(l), (2) and (3)], the quantity of marijuana is also an essential element to be proven by the state. It is clear from the testimony of the state’s witness and from state’s exhibit number twelve (12), that the state did not meet its burden of proof....” We disagree.
The reporter’s comments following R.S. 14:27 state:
“[It] is immaterial whether there is an actual possibility of committing the intended offense. An attempted homicide may fail because the gun used is defective or the poison used is not sufficiently deadly. An attempted rape may fail because the perpetrator is impotent; or an attempted theft may fail because the cash drawer looted or the pocket picked is empty. Where such conditions preventing the consummation of the crime are unknown to the offender, they do not prevent his being liable for an attempt. The essential elements are an actual specific intent to commit the offense, and an overt act directed toward that end. The subjective mental element is all-important in this offense... ” (Emphasis added.)
In accord see State v. Ourso, 438 So.2d 1239 (La.App. 3rd Cir.1983), writ denied, 442 So.2d 460 (La.1983).
Viewing the evidence in a light most favorable to the prosecution, the record shows that defendant had the subjective mental intent to commit the offense of possession of 10,000 or more pounds of marijuana and made overt actions directed toward that end.
PREDISPOSITION TO COMMIT CRIME
This assignment of error presents the issue of whether the trial court erred in allowing Louis Belaire to testify concerning defendant’s past involvement with large scale smuggling of marijuana. The State contends that Belaire’s testimony was admissible to rebut the defense of entrapment.
In State v. Batiste, 363 So.2d 639 (La.1978), the Supreme Court enunciated that:

“Under the generally accepted view an entrapment is perpetrated when a law enforcement official or a person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct con
*784
stituting such offense when he is not then otherwise disposed to do so. This view, which has been labeled the ‘subjective’ or ‘origin of intent’ test for entrapment, reflects the views espoused in majority opinions of the United States Supreme Court ... It is so called because it focuses attention on the defendant’s predisposition to commit the offense as well as the actions of law enforcement officials. The inquiry under this test goes beyond the fact that criminal conduct was committed at the instance of law enforcement officials. Once government instigation is shown, the inquiry focuses upon the predisposition of the defendant. Under this test, the ultimate question is whether the inducement by the officers or the defendant’s own predisposition caused the criminal conduct in question.” (Citations omitted.) (Emphasis added.)

Applying State v. Batiste, we stated in State v. Guarisco, 466 So.2d 1356 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 946 (La.1985):

“Generally, evidence of other crimes is inadmissible because the probative value as to the defendant’s guilt of the charged offense is outweighed by the prejudicial effect. State v. Gaines, 340 So.2d 1294 (La.1976); State v. Prieur, 277 So.2d 126 (La.1973). However, when the evidence offered has independent relevance, the general rule of exclusion is inapplicable, and the test of admissibility is then one of weighing the probative value against the prejudicial effect. State v. Humphrey, 412 So.2d 507 (La.1982). Even where the other crimes evidence does not have independent relevance, it may still be admissible if the defendant chooses to pursue the defense of entrapment. State v. Batiste, 363 So.2d 639 (La.1978). Defendant contends that the trial judge failed to apply the proper standard in determining the admissibility of the evidence of other crimes. The trial judge relied on the standard as set forth in State v. Batiste, supra, based on the fact that defendant urged the defense of entrapment. In Batiste, the Supreme Court set forth a threefold test for determining the admissibility of other crimes evidence to rebut a defense of entrapment. The factors, as set forth in Batiste, are as follows: (1) the other crimes evidence must be of a similar character of the offense for which the defendant is on trial; (2) the other crimes evidence must not be remote in time from the offense charged; and, (3) the prejudicial effect must not outweigh the probative value on the issue of the defendant’s predisposition. ”

We need not address defendant’s first contention that the State’s witness misled and misrepresented to the trial court the date defendant’s earlier drug smuggling occurred. Defendant states in brief that after trial he learned that the date the alleged incident took place was 1977 rather than 1978 or 1979. Defendant’s statement, even if correct, goes outside the record and, therefore, cannot be addressed.
Louis Belaire testified that while he was the chief criminal investigator for the Iberia Sheriff’s Office between 1980 and 1982 he met defendant, an uncompensated confidential informant, on four or five occasions at the Acadiana Regional Airport for the purpose of receiving information from defendant concerning drug activity in Iberia Parish. In late 1980 defendant told Belaire that in 1978 or 1979 he stored a large amount of marijuana in his barns for Raleigh Viator for a $10,000 fee and that Viator never paid him the money. Although Belaire did not arrest defendant then and he did not make a written transcription for the files of what defendant told him, he testified that he verbally passed on the information to Lt. Delcam-bre, a narcotic’s officer with the Louisiana State Police. Defendant’s storage activity for Viator coincided with the time when a large amount of marijuana was stolen from the Iberia Parish courthouse.
The trial judge evaluated Belaire’s testimony in light of the criteria enunciated in *785 Batiste, specifically addressing the question of remoteness. In that regard, the trial court noted for the record that in defendant’s initial meeting with the undercover agents he spoke about his earlier involvement in a prior large scale storage of marijuana. We note, too, several references in the transcript where defendant told the agents of his concern for payment on the spot because previously he experienced not being paid for his services. The jury also heard Belaire’s testimony after hearing the undercover agents state that Brock Hayes brought them to defendant because defendant could handle a large scale marijuana operation; another indication that defendant had a reputation on the street for prior involvement in large scale marijuana operations. Relevant evidence tends to show or negate the commission of the offense or intent. LSA-R.S. 15:441. Accordingly, relevance is determined by the purpose for which the evidence is offered. LSA-R.S. 15:442. It is well settled that a determination of relevance lies within the trial judge’s discretion and will not be disturbed absent a clear showing of abuse of that discretion. State v. Miles, 402 So.2d 644 (La.1981).
In light of defendant’s statements to the undercover agents concerning his prior involvement in large scale marijuana smuggling, we find clear and convincing evidence of defendant’s criminal activity in 1978 or 1979. Belaire’s testimony was pertinent to whether defendant’s own predisposition caused the criminal conduct in question. Therefore, the probative value of Belaire’s testimony sufficiently outweighed its prejudicial effect.
Defendant finally argues that the trial court erred in permitting the introduction of predisposition evidence at a time in the trial before it was clearly demonstrated that defendant invoked the entrapment defense. In ruling that this threshold issue had been crossed, the trial court emphasized that defense counsel: (1) queried the prospective jurors on voir dire examination about their opinions on entrapment; (2) devoted part of his opening statement to the entrapment defense; (3) submitted 4 or 5 jury instructions dealing with entrapment; and (4) developed the entrapment issue in cross-examination of the State’s witnesses. Reviewing the entirety of the record, we cannot say that the trial court erred in concluding that the defense of entrapment was raised prior to the introduction of evidence concerning defendant’s predisposition to commit the crime.
MOTION TO QUASH
On the day of trial defendant filed a motion to quash the indictment against him alleging that he cannot be convicted of a conspiracy and of an attempt to commit the same crime. Such is not the case sub judi-ce.
Two or more offenses may be included in the same indictment in a separate count for each offense if the offenses are of the same or similar character. LSA-C.Cr.P. Art. 493. The indictment against defendant alleges two distinct crimes: one, a conspiracy to possess 40,000 pounds of marijuana, existed between June 5, to July 27, 1984; the other, an attempt to possess 10,-000 pounds or more of marijuana occurred on July 27, 1984.
Each count of the indictment sets out a different crime, each requiring different elements to obtain a conviction. Unlike attempt, criminal conspiracy necessitates an agreement of purpose between two or more persons. R.S. 14:26. The presence of Brock Hayes was essential to the State’s conspiracy charge against defendant to possess 40,000 pounds of marijuana; whereas defendant’s agreement to accept $20,000 to store 200 bales of marijuana, without the undercover agents having to release the marijuana to him, was all that was required to establish the attempt to possess on July 27, 1984. Therefore the trial court properly denied defendant’s motion to quash.
MISTRIAL
LSA-C.Cr.P. Art. 770 provides:

*786
“Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

⅜ * $ $ ⅜ ⅜

(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; ...”

The granting of a mistrial is within the discretion of the trial court, and denial of mistrial will not be disturbed on appeal absent an abuse of discretion. State v. Nuccio, 454 So.2d 93 (La.1984).
Defendant contends that the trial judge erred in not declaring a mistrial because of the State’s reference to other crimes in its rebuttal closing argument.
In closing argument defendant stated:

.. [The State] brought before you officers of the law, sworn to discharge their duty, who claimed confessions not since July, but three years ago, or four years or five years ago. It was necessary to assassinate Mr. Farmer’s character in order to attempt to show you ... that he was predisposed. ”

In rebuttal argument the State said: “There’s a perversity that exists in this country today that everytime an individual is brought to trial for his crimes the thing is turned and the officers who have brought him to justice and the prosecutors who bring him to justice and attempt to prove the case against him end up defending themselves and I for one, am not going to tolerate it. We had outstanding officers here who were doing their duty and they did not perjure themselves, they told it exactly like the case went down and they were under oath and I am not here to assassinate the character of any individual, but I can assure you, I’m not going to let some individual come into court and masquerade as an individual dupe of some smart officers who are trying to trick him into the penitentiary, when I know and I can put in a witness that will testify that he is in fact a criminal from the past and he confessed that very crime that he was charged with of doing the same thing of storing marijuana back at another time, at another place.

We’re not dealing with a kid, we’re dealing with an older man who has done this before and I resent the implication that either the officers or the District Attorney’s office has had anything to do with a character assassination of an innocent, honest citizen....”

Defendant’s contention is that the district attorney admitted, by stating he could “put in a witness that will testify”, that he had personal knowledge of defendant’s criminal past and that such testimony was not admitted into evidence.
Defendant’s position is ill founded, and takes the phrase at issue out of context. The district attorney was responding to defense counsel’s accusation that defendant’s character was assassinated by Be-laire. When Belaire testified he made it known to the jury that defendant was never prosecuted for the criminal activity he admitted. When the district attorney’s rebuttal statement is read in context of the entire trial, it is clear that the statement referred to the evidence admitted at trial to show defendant’s predisposition to commit the crimes charged.
MOTION TO RECUSE
Defendant contends that the trial court erred in its denial of his motion to recuse the trial judge. Defendant failed to brief this assignment of error. Assignments of error not briefed are considered abandoned. State v. Dore, 443 So.2d 644 (La.App. 3rd Cir.1983).
RESPONSIVE VERDICTS
Defendant argues that the trial court erred in its misstatement of the responsive verdicts to the charge of conspiracy to possess 10,000 pounds or more of *787 marijuana. Defendant failed to object to the trial court’s charge, including the pertinent responsive verdict. On this basis alone defendant’s reliance on State v. Diaz, 461 So.2d 1099 (La.App. 5th Cir.1984), is distinguishable. Defendant’s failure to object to the responsive verdict precludes him from raising the issue on appeal. In accord State v. Henry, 449 So.2d 486 (La.1984). Contrary to defendant’s assertion, although the jury verdict is reviewable under an error’s patent check, a statement (or misstatement) of the responsive verdicts given as part of the jury instruction is not reviewable as a patent error. State v. Craddock, 307 So.2d 342 (La.1975).
REQUIRED MINIMUM SENTENCE
Defendant argues that the sentencing court erred in its determination that R.S. 40:979 required a minimum sentence for the attempt and conspiracy charges. The record is void of any suggestion that the sentencing court felt required to impose a specific minimum sentence. However, the record is clear that the sentencing judge rejected defendant’s request to state for the record whether he thought a minimum sentence was statutorily mandated. Defendant made no objection to the sentencing judge’s action. C.Cr.P. Art. 841. This assignment of error is therefore not reviewable.
EXCESSIVENESS OF SENTENCE
Article I, Section 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishment. For a sentence to be excessive, the penalty must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Bonanno, 384 So.2d 355 (La.1980). The sentencing court is given wide discretion in the imposition of sentences within statutory limits, and the sentence should not be set aside as excessive in the absence of a manifest abuse of the sentencing court’s discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
The maximum sentence each for conspiracy to possess and attempt to possess 10,-000 pounds or more of marijuana, as provided when these offenses were tried, is imprisonment for 17½ years at hard labor without the benefit of parole, probation or suspension of sentence and a $250,000 fine. R.S. 40:966 E(3) and F(l), and 40:979 A. Defendant’s sentences fall within the statutory limits. Nonetheless, it is judicially recognized that a sentence, although within the statutory limits, may violate defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing court’s reasons for imposition of sentence are an important aid when we review a sentence for excessiveness. State v. Bourgeois, 406 So.2d 550 (La.1981).
LSA-C.Cr.P. Art. 894.1 provides criteria for consideration in determining whether a sentence is excessive. State v. Sepulvado, supra. Even though the sentencing court need not articulate every aggravating and mitigating circumstance contained in Article 894.1 the record must reflect that adequate consideration was given to these co-dal guidelines in particularizing the defendant’s sentence. State v. Smith, 433 So.2d 688 (La.1983).
Though defendant contends the sentencing court failed to follow Article 894.1, he concedes in brief that the court enumerated various aggravating and mitigating factors. Defendant, however, focuses his argument alleging the sentencing court failed to consider that: (1) defendant led a law-abiding life for a substantial period of time before these crimes; (2) defendant’s character and attitude lessened the likelihood of his committing another crime; and (3) the sentences imposed would create an excessive hardship to defendant and his family.
After hearing defense counsel’s argument, questioning defendant about his family and employment, and reviewing defendant’s pre-sentence investigation, the sentencing court stated:

“The defendant has been convicted of two very serious criminal offenses, con-

*788 spiracy to possess more than 10,000 pounds of marijuana and attempt to possess more than 10,000 pounds of marijuana. Contrary to the suggestion of counsel that he was singled out to be investigated and prosecuted for this offense, ... there is no evidence in the record to establish, that any of these [undercover] agents were told to concentrate on a particular defend-ant_ And in the course of that investigation, they came across this defendant and as the evidence showed, provided him with the opportunity to make a windfall profit. It is true that as counsel for the defendant suggests that this defendant apparently did not openly solicit this crime. However, the evidence likewise reflects that he showed no reticence to participating. That he took the two undercover agents on an automobile trip throughout parts of Iberia and St. Mary Parishes at their request and showed them sites which he though would be suitable for off-loading and storing large quantities of marijuana. He was not forced to do this. He could have refused. He could have indicated with abundant clarity that he had no intention of doing these acts. The amounts of money dangled before this defendant, which could have been his, for very little, if any work or effort, apparently enticed him to go along and he did. And the trial jury was convinced beyond a reasonable doubt that he did and that he was not entrapped into doing that. It developed as the evidence in this case, that he had, on an occasion, previously participated in some act similar to the one involved in this crime. Although he was never convicted of that offense, he admitted having participated in a similar event in the past. Further, the defendant was convicted of an attempt to possess more than 10,000 pounds of marijuana at his residence in the Co-teau area of Iberia parish. At that time, and at the time of his arrest, shots were fired by the police officers. The defendant and another person fled and hid in a field. Maybe because they were in fear of their life. Maybe for their own reasons, but the situation existed wherein someone could have been seriously hurt or killed. The Court views these matters with great seriousness. The Court is aware of the problems encountered by law enforcement agencies in detecting, investigating, arresting, prosecuting persons who are suspected of dealing in controlled, dangerous substances, including marijuana. The Court in imposing the sentence, first of all believes it to be fair under the law to this defendant. It is a sentence, the Court feels appropriate, considering all of the circumstances of the offenses. Secondly, the Court wishes to send a message to any other persons contemplating or involved in such conduct, that it will continue to be viewed with great seriousness by this Court. Specifically, the Court finds that [it] ... cannot, it suggests, suspend or defer the imposition of this sentence, nor can the Court under the cited authorities, impose a sentence in any manner other than without benefit of probation, parole, or suspension [of sentence] ... There would be, in this Court’s view an undue risk that during the period of any suspended sentence or probation, the defendant would commit another crime of the same nature if the facts and circumstances were similar. That is, where large amounts were involved and large amounts of money were involved. The Court feels the defendant is in need of correctional treatment or custodial environment. That can be provided most effectively by his commitment to an institution. And most assuredly the Court finds that a lesser sentence than the one herein imposed would deprecate the seriousness of the defendant’s crime. Likewise, the Court states for the record, that it has taken into consideration certain mitigating factors in favor of the defendant. That is that the defendant’s criminal conduct did not cause any serious bodily harm to any *789 one. It could have. Had the marijuana gotten out of control, it could have caiised serious damage to others. And certainly, during the time that the shots were fired at the time of the defendant’s arrest, serious bodily harm might have been, might have occurred. ... The defendant acted on his own volition. He was not forced. He was not entrapped. He exceeded [sic] to the temptation provided to him. There were no substantial grounds tending to excuse or justify the defendant’s criminal conduct. He could have absolutely refused to have anything to do with those persons who were suggesting that he engage in this type of conduct. He did not. To the contrary, [he] voluntarily, actively assisted the undercover agents in searching for and providing locations wherein large quantities of marijuana could be offloaded and stored. There was no specific victim of this crime other than the people of the State of Louisiana and the Parish of Iberia. The Court finds that the defendant has not been convicted of any previous criminal acts. However, the court has mentioned that the defendant has admitted in the past to committing a criminal act similar to the one for which he was convicted. ”
After a careful review of the record, we find the sentencing court articulated a well reasoned determination for its sentencing choice.
In further argument defendant contends there was “no particular justification” for the sentencing court’s decision that defendant’s sentences be served consecutively.
LSA-C.Cr.P. Art. 883 provides in pertinent part:
“If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. ...”
The sentencing court specifically enunciated that despite some interrelation between the two crimes, they were not based on the same act or transaction; we further note that they were not part of a common plan or scheme. Throughout its sentencing colloquy the sentencing court emphasized the high level of risk defendant’s large scale smuggling operation posed to the community-
We find the record overwhelmingly supports the sentencing choice. In view of the sentencing court’s wide discretion in imposing its sentencing choice within the statutory limits, we find that defendant’s sentences are neither so disproportionate as to shock our sense of justice, nor an abuse of the sentencing court’s discretion. Therefore we conclude that defendant’s sentences are not constitutionally excessive.
DECREE
For the foregoing reasons, the convictions and sentences of defendant, Donald Farmer, are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs. I agree totally with this conviction and sentence, but concur only to again state my opinion that Jackson v. Virginia should not apply to Louisiana criminal review and that sentences within the limits of the statute should not be reversed for excessiveness.