KNOLL, Judge.
Defendant, Gerald Hebert, was charged by bill of information with attempted second-degree murder. He was also indicted by the grand jury for aggravated criminal damage to property, a violation of LSA-R.S. 14:55. Trial was held on the charge of aggravated criminal damage to property from which defendant now appeals his jury conviction. After the State filed notice of its intent to invoke the sentencing provisions of LSA-C.Cr.P. Art. 893.1, the defendant was sentenced to serve 15 years at hard labor, the first 5 years to be served without benefit of parole, probation or suspension of sentence. Following the imposition of sentence, the State nolle prose-quied the attempted second-degree murder charge.
Defendant assigns as error that: (1) the trial court erred in permitting two arresting officers to testify that defendant was also arrested for attempted second-degree murder without first giving notice of intent to introduce other crimes evidence; (2) the jury verdict is contrary to the law and evidence, a rational trier of fact being unable to find guilt beyond a reasonable doubt even when the evidence is viewed in a light most favorably to the prosecution; and (3) the sentencing court imposed an excessive sentence in violation of LSA-La. Const. Art. I Section 20. We affirm.
FACTS
In the early morning hours of January 26,1984, five shotgun blasts riddled a lighted trailer at various heights at the site of Construction Industries, Inc., a concrete business operated by Dunham-Price, Inc. Pellets from the blast blinded John F. Burt III, a security guard inside the trailer. Although two spent shotgun casings and wadding were found at the scene, there were no suspects. Calcasieu Parish residents, polarized by several incidents between striking and non-striking laborers, raised $30,000 as a reward for anyone able to provide information leading to the arrest of the person or persons responsible for this shooting.
In July 1985 defendant’s wife, Leona Hebert, anonymously provided information to Crime Stoppers which resulted in defendant’s arrest on July 14, 1985, on charges of attempted second-degree murder and aggravated criminal damage to property.
OTHER CRIMES EVIDENCE
Defendant contends the trial court erred when it allowed two experienced police officers to testify about defendant’s arrest for second-degree murder without notifying the defense of its intent to introduce the other crimes evidence.
Under LSA-C.Cr.P. Art. 841 an irregularity or error at trial cannot be availed of after verdict unless the party makes known his objection and the grounds for it. State v. Gordy, 380 So.2d 1347 (La.1980). In objecting, the party is required to state the basis of his objection so that the trial court will have an opportunity to rule on the objection and the grounds for the objection will be preserved in the record. State v. Baylis, 388 So.2d 713 (La.1980). The record in the case sub judi-ce only discloses that defendant objected to the testimony of two arresting officers and did not, as required by C.Cr.P. Art. 841, state for the record any grounds for the objection.
Nonetheless, for the sake of providing a full review of defendant’s assignment, we address his contention that the arresting officers’ testimony prejudiced the jury.
In State v. Haarala, 398 So.2d 1093 (La.1981), the court stated:
“As a general rule, the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime. State v. Monroe, 364 So.2d 570 (La.1978); State v. Sutfield, 354 So.2d 1334 (La.1978). This rule results from the belief that admission of this type character evidence creates a great risk of unjust convictions because the jury is likely to give the evidence excessive weight and convict the defendant merely because he is a bad man, *314 because the defendant may well be unprepared to face such attacks, and because the jury is likely to be confused by proof of collateral issues. State v. Prieur, 277 So.2d 126 (La.1973); Comment, Other Crimes Evidence in Louisiana, 33 La.L.Rev. 614 (1973).
The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence § 218 (3d ed. 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48. A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required. See State v. Schwartz, 354 So.2d 1332, 1334 (La.1978) and cases cited therein. This close connexity in time and location is essential to the exception because no notice of the state’s intention to introduce evidence of offenses which are part of the res gestae is required. See La.C.Cr.P. art. 720; State v. Prieur, supra; Pugh, Louisiana Evidence Law 100-01 (Supp.1978) excerpting 35 La.L.Rev. 525, 526-27 (1975).
This Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused’s character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940).”
After reviewing the entirety of the record, we conclude that the officers' testimony was properly admitted as part of the res gestae since both charges stem from the same incident. Furthermore, it was made known to the jury during the trial that an individual was shot in connection with the tried offense and the victim’s testimony- was also presented to the jury. Therefore since the evidence was properly admitted and the record shows that no prejudice was established, this assignment is without merit.
SUFFICIENCY OF EVIDENCE
Defendant contends that there was insufficient evidence to support his conviction for aggravated criminal damage to property.
In State v. Graham, 422 So.2d 123 (La.1982) the Louisiana Supreme Court considered the constitutional standards to judge the sufficiency of the evidence. The court stated:
“The Due Process Clause of the Fourteenth Amendment requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process, and his conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, we are governed by our statutory rule as to circumstantial evidence: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. R.S. 15:438.”
Defendant was indicted for aggravated criminal damage to property which is defined in pertinent part in R.S. 14:55 as follows:
*315 “Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion.”
As an element of the crime defined hereinabove the State had to prove the requisite intent to commit the crime charged. Intent may be inferred from the circumstances of transactions and actions of the accused, and it need not be proven as a fact. LSA-R.S. 15:445; State v. Farmer, 497 So.2d 777 (La.App. 3rd Cir.1986), writ granted in part and reversed in part on other grounds, 503 So.2d 469 (La.1987). The trier of fact determines whether defendant had the requisite intent to commit the crime and its determination is a question of fact. State v. Graham, 420 So.2d 1126 (La.1982).
Accordingly, the State had the burden of proving beyond a reasonable doubt that defendant intentionally damaged the Construction Industries trailer, by any means other than fire or explosion, wherein it was forseeable that the life of John F. Burt, III might be endangered.
Viewing the evidence in a light most favorable to the prosecution, we find that the record shows that the State proved beyond a reasonable doubt that on January 26, 1984, defendant fired five shotgun blasts into a lighted trailer wherein it was forseeable that human life would be in danger. The State’s proof was premised on the testimony of Leona Soileau Hebert, defendant’s estranged wife, Charles Ellis, the State’s ballistics expert, and that of Tom Harless, another ballistics expert.
Leona Hebert testified that: on the night of the shooting she and defendant drove by the trailer on their way home and that as they passed Construction Industries defendant made disparaging remarks about the low wages the security guard was receiving; there were lights on in the trailer when they passed; and, that defendant told her there was a security guard on the premises. According to Mrs. Hebert, defendant got up from bed at approximately 3:00 a.m., dressed and took a shotgun and box of shells as he left. Defendant returned to the trailer at approximately 5:45 a.m. That morning as she and defendant watched the news, defendant admitted to her, after persistent questioning by her, that he fired five shots into the trailer and that the security guard deserved being shot because he had no business being on the premises. Later that afternoon defendant drove her by the trailer and expressed satisfaction to her about the good shot pattern the shotgun blasts left in the trailer.
Law enforcement officers testified they recovered two spent shell casings from the road bordering the shooting site. When defendant was arrested they further testified they seized a Browning shotgun from defendant’s residence. At trial Charles Ellis and Tom Harless, experts in firearm identification, testified that they conducted ballistics tests and opined that the shells found at the crime scene were fired by defendant’s gun.
Defendant attacked the credibility of Leona Hebert at trial and renews that attack on appeal. He contends that: (1) she did not anonymously call Crime Stoppers until defendant refused to consent to a legal separation; (2) she received a $30,000 reward for her testimony, as well as prose-cutorial immunity; and, (3) she had a history of having her son arrested and then dropping the criminal charges.
The determination of the credibility of witnesses is within the sound discretion of the trial court and, like all questions of fact, will not be disturbed unless it is clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La.1984). The fact finder’s role is to weigh the respective cred-ibilities of the witnesses, and an appellate court will not second-guess those determinations of the trier of fact beyond our sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). All of the arguments regarding Mrs. Hebert’s motives for testifying against defendant were presented to the jury and we will not now try to second-guess its determination.
*316 Defendant further argues on appeal that even though various law enforcement officials testified about their discovery of two spent shell casings at the scene of the crime, none of the 53 pictures of that scene admitted into evidence at trial corroborate their testimony. After reviewing the record, we cannot conclude that the absence of this photographic evidence makes the officers’ testimony less credible. The police officers testified about their search for evidence, their discovery of the spent shells and their procedure for depositing the shells into a marked evidence envelope which they sealed. Defendant has failed to show any break in the chain of custody and certainly we cannot conclude that the jury erred in its reliance upon this physical evidence. This assignment of error is without merit.
EXCESSIVENESS OF SENTENCE
Defendant contends that the sentencing court’s imposition of a 15 year sentence, of which the first 5 years must be served without benefit of parole, probation or suspension of sentence, is excessive and a violation of LSA-La. Const. Art. I Section 20.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishment. For a sentence to be excessive, the penalty must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Campbell, 404 So.2d 1205 (La. 1981); State v. Bonanno, 384 So.2d 355 (La.1980). The sentencing court is given wide discretion in the imposition of sentences within statutory limits, and the sentence should not be set aside as excessive in the absence of a manifest abuse of the sentencing court’s discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
The maximum sentence for aggravated criminal damage to property is imprisonment for 15 years at hard labor and a fine of $10,000. Through the use of LSA-C.Cr.P. Art. 893.1 the first 5 years may be ordered served without benefit of parole, probation or suspension of sentence. Defendant’s sentence falls within the statutory limits. Nonetheless, it is judicially recognized that a sentence, although within the statutory limits, may violate defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). When we review a sentence for excessiveness, the sentencing court’s reasons for imposition of sentence are an important aid. State v. Bourgeois, 406 So.2d 550 (La.1981).
After reviewing the pre-sentence investigation prepared at defendant’s request, the sentencing court stated:
“I will attempt, as required by law, to articulate the reasons for the sentence imposed. First, the legislature has listed eleven grounds which, although not controlling the discretion of the Court, should be accorded weight in its determination of suspension of sentence or probation. Although a suspended sentence and probation are not permissible alternatives in this case, I have considered these eleven grounds to see if mitigating circumstances are present in this case warranting a more lenient, if not suspended, sentence. I find only one of the eleven listed ... [grounds] present, and that is the lack of a prior criminal record. The eleven grounds are as follows: First, the defendant's criminal conduct neither caused nor threatened serious harm. That, obviously, is not present in this case in view of the injuries received by the victim. Second, the defendant did not contemplate that his criminal conduct would cause or threaten serious harm. That element is not present in this case. Next, the defendant acted under strong provocation. Of course, there was no provocation whatsoever for the act of the defendant in this case. Fourth, there was substantial grounds tending to excuse or justify the defendant’s criminal conduct though failing to establish a defense. There were no grounds, much less substantial grounds, intending to excuse or justify his conduct in this case. Fifth, the victim of the defendant’s criminal conduct induced or facilitated its commission. That, of course, is not present either in this case. Sixth, the defendant has compensated or *317 will compensate the victim of his criminal conduct for the damage or injury that he sustained. There has been no compensation to the victim by the defendant and no indication that he will compensate the victim. Next, and this is the one element that does apply, or the one factor that does apply, and that is this. The defendant has no history of prior delinquency or criminal activity or has led a law abiding life for a substantial period of time before the commission of the instant crime. The defendant has no prior record to the Court’s knowledge. Next, the defendant’s criminal conduct was the result of circumstances unlikely to recur. I cannot say that that is present. The circumstances were this: That there was a security guard for a company that was being picketed. That has happened many times in the past, and will undoubtedly happen many times in the future. Accordingly, these were not unique circumstances, peculiar circumstances unlikely to recur. The next, number nine, the character and attitudes of the defendant indicate that he is unlikely to commit another crime. I do not find that present. I will speak more about this a little later when I give reasons for the sentence as to his attitude. Next, the defendant is particularly likely to respond affirmatively to probationary treatment. Of course, probation is not an alternative in this case, a sentencing alternate. And next, and lastly, the imprisonment of the defendant would entail excessive hardship to himself or his dependents. I have no such information; in fact, my information is to the contrary. Now, on the other hand, the legislature has stated that the Court should impose a sentence of imprisonment if the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution, or number three, a lesser sentence will deprecate the seriousness of the defendant’s crime. I find both of these considerations present. I find that the defendant is in need of a custodial environment and, if fact, imprisonment is mandated. For two reasons, I believe that a lesser sentence will deprecate the seriousness of the crime. The first reason is found in the facts and circumstances surrounding the commission of the crime, including the attitude of the defendant, aside from the seriousness of the injuries inflicted. The second is the seriousness of the injuries. The evidence presented at the trial was, in part, that the defendant got up out of bed at approximately 3:00 o’clock, A.M., dressed, got his shotgun, and went to the site of the trailer located a short distance from his house. Lights were on in the trailer. The trailer belonged to Construction Industries, Inc., a non-union competitor of defendant’s brother’s business. For reasons immaterial here, a union that posted pickets at the gates of Construction Industries and John Burt, III had been hired as a security guard and was stationed inside the trailer. Hebert was not involved in the strike or in the picketing. The defendant fired five shotgun blasts into the side of the trailer, raking it with the blast from one end to the other, at heights that would be likely to hit anyone inside the trailer. Burt, who was sweeping the floor inside the trailer, was struck by some of the pellets, causing permanent blindness. There was no evidence that Hebert saw the victim in the trailer when he fired the shots or that he knew anyone was in the trailer, but he was aware that security guards had been hired and were stationed at the trailer. He had driven by the site on numerous occasions, the last time being earlier the morning of the shooting on his way home. He had expressed his contempt for such a man who would take the job of security guard at the trailer. Later the defendant admitted to the woman who was living with him that he had done the shooting. He took her by the trailer and called her attention to the, in his words, ‘nice shot pattern made by the pellets’. Was he remorseful after learning that Burt had been blinded? His comment to the woman living with him was, ‘that the victim deserved it, that he should not have been there’. I still have heard no expression of remorse. Despite overwhelming incriminating evidence, including the testimony of two ballistics experts, one hired by the State, the other by the defendant, that the shell casings found at the scene were *318 fired from his shotgun, the defendant chose to stand trial, and this was his right. However, as a result, I can only judge his attitude from the evidence presented at the trial, including his statement that the victim got what he deserved. The second and very compelling reason for the imposition of the maximum sentence of incarceration lies in the seriousness of the injuries suffered by the victim. I have been furnished, as required by law, with a victim impact statement. This statement consists of the tape of his recorded statement and the transcription of that statement. I have also been furnished a letter from his psychiatrist and one from his therapist. I will not attempt here to describe the physical, emotional, and psychological effects of this tragic occurrence on this young man because I cannot adequately do so. The tape, transcript, and letters do so better than I can, and I will file them in the record of this case. However, I will say this. While I may have thought I could somewhat imagine the horror he has suffered, is suffering, and will suffer, after reading his statement I realize that no one who has not been the victim of this particular act can possibly get more than a mere glimpse or shallow insight into the true depth of his injuries. Certainly, a lesser sentence than that imposed would deprecate the seriousness of the offense. I cannot imagine a set of facts surrounding the commission of the crime of aggravated criminal damage to property that would more justify the imposition of the maximum sentence of incarceration than those that exist in this case. It is not one in which just property was intentionally damaged, although it was foreseeable that human life might be endangered. It is one in which extremely serious injuries were, in fact, inflicted, and although it cannot, under the evidence, be assumed that the injuries were intentionally inflicted, the act was committed with complete disregard or concern for the life or safety of anyone who might foreseeably be in the trailer. If he did not actively desire to injure the security guard, he certainly did not care if he injured or killed the guard. Only through the grace of God and not through anything the defendant did or failed to do, the victim lived. The defendant is fortunate that his conviction was only for aggravated criminal damage to property and not for murder. I do not feel just that the sentence is justified, I feel that the Court is compelled to impose the sentence given. I have been unnecessarily but correctly reminded by the State’s attorney that no matter what the sentence is, some day the defendant will be released from prison, but the victim will never be released from his. In closing let me say that I have received and seriously considered the numerous letters written to me by family and friends on behalf of the defendant. He comes from a fine, respectable, law abiding, God fearing family. Some of the letters are written by people whom I know personally and whom I respect. One theme runs through all the letters, and that is that he is a likeable, hard-working man, who has been a non-violent person all his life. Most do not believe that he committed this act; most believe him incapable of doing so. In fact, based on statements in the letters, only one truly accepts the fact of his guilt. What these letters do is point out up the fact that a second tragedy has occurred. The first, of course, is the tragedy of the victim. The second is the tragic effect, not only upon the life of the defendant, but also upon the members of his family and close friends. It is tragic when any man with many good qualities commits a serious, lawless act of violence. Unfortunately, others close to him also suffer. I have also considered the report of the psychologist who examined the defendant. I will quote the last sentence of his report. It is interesting when considered together with the concern expressed in the letters. The last sentence reads as follows. ‘He seems to have been protected by concerned friends and family from the realities of his limitations and from the consequences of his behavior.’ Unfortunately, the reasons for his sentence, as I stated earlier, outweigh the information contained in the letters, and he cannot be protected by concerned friends and families from the consequences of his behavior in this instance.”
*319 We find the sentencing court articulated a well reasoned determination and we further find the record overwhelmingly supports the sentencing choice. We conclude that defendant’s sentence is neither so disproportionate as to shock our sense of justice, nor an abuse of the sentencing court’s wide discretion. The circumstances of this case exhibited a blatant and callous disregard for human life and property by the defendant. Therefore, defendant’s sentence is not constitutionally excessive.
DECREE
For the foregoing reasons, the conviction and sentence of defendant, Gerald Hebert, is affirmed. Costs of the trial court and this appeal are assessed defendant, Gerald Hebert.
AFFIRMED.
DOMENGEAUX, J., concurs.